Gary R. Selvin, State Bar No. 112030
E-mail: gselvin@selvinwraith.com
Elizabeth A. Doyle, State Bar No. 194536
E-mail: edoyle@selvinwraith.com
SELVIN WRAITH LLP
6250 Claremont Avenue, Suite 200
Oakland, CA 94618
Telephone: (510) 874-1811
Facsimile: (510) 465-8976

Attorneys for Plaintiff
U.S. SPECIALTY INSURANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>MIGUEL CALDERON dba MAC BUILDERS, a sole proprietorship; and MICHAEL LEDERER, an individual,<br><br>   Defendants. | CASE NO. 2:24−cv−05998 CVD (ASx)<br><br>**PLAINTIFF USSIC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: July 17, 2024 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................5

    A. Calderon and USSIC's Mutual Rescission Is Valid and Enforceable ..........................................................................................6

        1. Lederer's Non-Existent Rights Under the -01 Policy Have Not "Intervened" and Rescission Will Not Injure Them.................6

        2. Lederer Has No Basis to Argue The Rescission Agreement Was "Untimely" and There is No Prejudice to Lederer Due to Delay..................................................................9

        3. None of the Other Reasons Given by Lederer that the "Mutual Consent" Was "Non-Existent or "Subject to a Triable Issue of Fact" ............................................................... 10

        4. Lederer Is Not Entitled to A Continuance to Conduct Depositions ................................................................................. 10

    B. The Application Contained Material Misrepresentations When Submitted in July 2019 Entitling USSIC to Unilateral Rescission. ................................................................................................ 11

    C. The Questions on the Artisan Application Are Clear and Unambiguous. .......................................................................................... 16

    D. In the Alternative, the Classification Endorsement Bars Coverage .................................................................................................. 18

II. CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Admiral Ins. Co. v. Debber* 442 F. Supp. 2d 958 (E.D. Cal. 2006) ............................... 6

*Angle v. U.S. Fidelity and Guaranty Co.* 201 Cal.App.2d 758 (1962) ......................... 8

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854 (1993) .................................................................................................. 17

*Beckwith v. Sheldon*, 165 Cal. 319 (1913) .................................................................. 7

*Duarte v. Pac. Specialty Ins. Co.*, 13 Cal. App. 5th 45 (2017) .......................... 14, 16-17

*Favreau v. Navigators Ins. Co.*, No. G056718, 2020 WL 7351204 (Cal. Ct. App. Dec. 15, 2020) ...................................................................................... 15

*Gill v. Rich*, 128 Cal.App. 4th 1254 (2005) .............................................................. 7, 8

*Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079 (1997) ............................................ 7

*Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169 (1988) ....... 6, 18-19

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259 (2007) .......................................................................................................... 6, 13

*Lincoln Benefit Life Company v. Dallal* 500 F.Supp.3d 1041 (C.D. Cal. 2020). ....................................................................................................... 12

*Martinez v. Columbia Sportswear USA Corp.,* 553 F. App'x 760 (9th Cir. 2014) .................................................................................................................. 11

*Michell v. Grass Valley Gold Mines Co.* 206 Cal. 609 (1929) ..................................... 8

*Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457 (2005) ...................... 12, 14-15

*Navigators Ins. Co. v. Top Constr., Inc.,* No. 2:14-CV-2469-SVW-PJW, 2015 WL 5999326, (C.D. Cal. Apr. 27, 2015) ..................................................... 7, 9

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir.1996) ............................... 11

*Principal Mutual Life Insurance Co. v. Vars, Pave, McCord & Freedman,* 65 Cal.App.4th 1485–86 (1998) ............................................................................ 7

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903 (1986) ................... 18

*Rallod Transportation Co. v. Continental Insurance Company*, 727 F.2d 851 (9th Cir. 1984) .............................................................................................. 12

*Solomon v. Federal Ins. Co.* 176 Cal. 133 (1917)......................................................13

*U.S. Fid. & Guar. Co. v. Lee Invs. LLC,* 551 F. Supp. 2d 1114 (E.D. Cal. 2008). ...............................................................................................................11

*Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869 (N.D. Cal. 2014) ...............16

**Statutes**

California Civil Code § 1693 ..........................................................................................9

California Civil Code § 1689(a)................................................................................6, 10

California Civil Code § 1689(b)(7) ..............................................................................11

California Insurance Code § 11580(b)(2).......................................................................7

California Insurance Code § 356...................................................................................12

California Insurance Code § 359...................................................................................11

**Other**

39 California Jurisprudence 3d Insurance Contracts § 183..........................................13

# I. INTRODUCTION

Plaintiff U.S. SPECIALTY INSURANCE COMPANY ("USSIC"), as an insurer, chooses the risks it will and will not accept when entertaining applications for insurance. Here, the Undisputed Facts and Evidence establish that USSIC is entitled to rescind the 01-Policy based on misrepresentations in the policy application because insured's work exceeded the risk USSIC would write, and USSIC would not have written the policy if the answers and the insured's representations were accurate. The Artisan Application asks the simple question whether "the applicant has or will perform any exterior plastering work." Miguel Calderon's "No" answer to this question was false because Miguel Calderon dba MAC Builders ("Calderon") did, in fact, engage in exterior plastering work during the pendency of the 01-Policy. No proof of "secret intent" to actually perform exterior plastering work, as argued in Defendant Michael Lederer ("Lederer")'s Opposition, is required. Miguel Calderon's sworn declaration agreeing that the 01-Policy may be rescinded states that that he made inaccurate statements regarding the type of work performed, particularly exterior plastering work, upon which USSIC relied. Lederer has not established any basis upon which to disregard or invalidate the agreement between the parties to the insurance contract – Calderon and USSIC – to rescind the -01 Policy.

In addition to mutual rescission, USSIC is entitled to unilateral rescission. Lederer's assertion that USSIC could only rely on Calderon's representations regarding the type of work that Calderon performed prior to or on the July 15, 2019 application date and nothing after is a red herring. An insurer has the right to select the risks it will insure and those it will not. Under California law, USSIC was entitled to rely on the answer "No" to the question whether "the applicant has *or will* perform any exterior plastering work." The questions are written to assess the type of the work that the insured will perform in its business and go straight to the issue of insurability of the risk. There is no basis under California's rules of policy interpretation, which extend to insurance policy applications, or rescission law, to disregard, or read the crucial

words "or will" out of the questions asked by USSIC in the Artisan Application. Lederer puts forth no evidence to rebut USSIC's evidence that Calderon made misrepresentations on his Application or that the questions on the Application were material to USSIC's decision to issue general liability insurance to Calderon.

The Undisputed Facts and Evidence also establish the claims alleged in the Underlying Action do not trigger a duty to defend because they do not fall within the Classification Endorsement, as required to satisfy the Insuring Agreement of the -01 Policy.

### A. Calderon and USSIC's Mutual Rescission Is Valid and Enforceable

Lederer contends that USSIC is not entitled to rescission of the -01 Policy based on its mutual agreement with Calderon for rescission of the policy under California Civil Code Section 1689(a) because "the rights of others have intervened" and because rescission "with respect to Mr. Lederer" would be inequitable or untimely. Lederer is incorrect. California insurers are permitted to rescind liability insurance notwithstanding pending third-party claims that may be covered under those the policies. See *e.g.*, *LA Sound USA, Inc*, 156 Cal. App. 4th at 1267–68 (2007); *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 182 (1988). Lederer has no rights under the -01 Policy, and thus cannot assert the equitable defense of "prejudice" to the mutually agreed rescission of the -01 Policy between the two parties to the insurance contract, Calderon and USSIC.

Even if Lederer had rights to the -01 Policy, Lederer has not satisfied his burden of production to establish his rights are prejudiced by the Rescission Agreement sufficient to defeat USSIC's motion for summary judgment. *Admiral Ins. Co. v. Debber*, 442 F. Supp. 2d 958, 961 (E.D. Cal. 2006) [The burden of affirmatively demonstrating substantial prejudice lies with the party asserting laches.]

#### 1. Lederer's Non-Existent Rights Under the -01 Policy Have Not "Intervened" and Rescission Will Not Injure Them.

Lederer is not a party to the -01 Policy. And, as a matter of long-established

6

California insurance law, Lederer is not a judgment creditor of Calderon with respect to the pending Underlying Action, and is thus not a third party beneficiary to the -01 Policy. See Cal. Ins. Code § 11580(b)(2); *Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079, 1086-1088 (1997).  In *Navigators Ins. Co. v. Top Constr., Inc.,* No. 2:14-CV-2469-SVW-PJW, 2015 WL 5999326, (C.D. Cal. Apr. 27, 2015), the court ruled that a third party claimant, such as Lederer, had no standing or basis upon which to object to rescission of doctor's liability policy on grounds of prejudice or untimeliness because the third party claimant was not an express "intended third party beneficiary" of the policy as set forth in *Principal Mutual Life Insurance Co. v. Vars, Pave, McCord & Freedman,* 65 Cal.App.4th 1485–86 (1998) or a judgment creditor of the insured under Insurance Code Section 11580.  *Id.* at *3.

The authorities upon which Lederer relies to support his argument that his "intervening rights" prevent rescission do not apply. The key factor distinguishing Lederer's cited case authority from the present matter is that, in each case, each party seeking to nullify or invalidate the rescission had a legal right to the subject matter of the contract at issue. Lederer, by contrast, does not.

In *Beckwith v. Sheldon*, 165 Cal. 319 (1913), plaintiff's deceased predecessor transferred his water rights to defendants, who expended large sums of money in perfecting those rights and building an irrigation system.  Plaintiff could not rescind the contract because it was impossible to restore defendants to their *status quo ante*. The court stated that "where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied." *Id.* at 324.   Here, Lederer fails to articulate: (i) what his intervening rights to the -01 Policy are; (ii) what are the "changed circumstances" that affect his purported rights.

*Gill v. Rich*, 128 Cal.App. 4th 1254 (2005) is also inapposite.  In *Gill*, physician members of an insolvent inter-indemnity trust sought rescission of the trust because the trustees had committed fraud in the management of the trust. *Id.* at 1269. The court

7

denied rescission because the physicians had previously accepted the benefits of the contract and had thereby waived their right to rescind. *Gill v. Rich*, 128 Cal. App. 4th 1254 (2005). Neither Calderon nor USSIC is similarly situated to the parties to the rescission at issue in *Gill*. In contrast, USSIC has not received any benefits from the contract aside from the premium that it has tendered back to Calderon.

In *Michell v. Grass Valley Gold Mines Co.* 206 Cal. 609 (1929), the plaintiff landowners entered into an agreement with a promoter to develop their land for mining. Plaintiffs formed a corporation and deeded their mining rights to the corporation. After the property was transferred to the corporation, the stock issued as agreed, and shares sold to the public, plaintiffs learned that a permit would have to be obtained and thus the agreement was illegal. Plaintiffs then notified the corporation that they were rescinding the contract and demanded their property back. The court denied rescission because third parties had already invested in reliance upon the property turned over by plaintiffs. Here, as discussed below, even if Lederer had rights under -01 Policy, there is no evidence that he relied his detriment or somehow changed his position based on the timing of the Rescission Agreement. *Mitchel* does not apply.

*Angle v. U.S. Fidelity and Guaranty Co.* 201 Cal.App.2d 758 (1962) is also inapposite. In *Angle,* the plaintiff secured homeowners coverage for $17,000 through a binder issued by insurer USF&G. Unbeknownst to plaintiff, the trust deed holder of the property had acquired a policy from insurer Safeguard for $10,000. After a fire occurred, USF&G replaced its $17,000 binder with a policy in the sum of $7,000, to account for the $10,000 Safeguard policy. Plaintiff accepted the new $7,000 policy and agreed to the rescission of USF&G's previous $17,000 binder based on its representation that she would not suffer a reduction in coverage for the loss. Nevertheless, the court disallowed the rescission, concluding it would cause substantial injury to Safeguard's right to have its share of liability prorated on the basis of the "whole" insurance as it existed at the time of the fire, i.e. prorated based on the $10,000 and $17,000 amounts of coverage. Here, in contrast, Lederer does not have,

and did not have, at the time of the Rescission Agreement, had no "intervening rights" to prevent Rescission Agreement.

### 2. Lederer Has No Basis to Argue The Rescission Agreement Was "Untimely" and There is No Prejudice to Lederer Due to Delay

Lederer further contends that enforcing the parties' mutual Rescission Agreement with respect to the -01 Policy would be "inequitable" because the July 2023 Rescission Agreement was "untimely." However, Lederer has no standing or basis upon which do so. Under California law, rescission "shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party." Cal. Civ. Code §1693. The "other party" to the –01 Policy is Calderon, who agreed to the rescission and thus has not asserted prejudice. See *Navigators Ins. Co.*, WL 5999326, at *2 (2015) [Civ. Code § 1693, which codifies the laches doctrine, does not require an insurer to provide notice of rescission to a third party claimant unless and until it became a judgment creditor]

Nevertheless, assuming *arguendo* that Lederer had rights under the -01 Policy sufficient to assert an equitable objection on grounds of prejudice, Lederer cannot, based on the undisputed facts, establish that his rights were impaired by the timing of the Rescission Agreement. The timing of Rescission Agreement did not place him in a worse position than he would have been in had the -01 Policy been rescinded earlier. Calderon's representations on the July 2019 Application, in which he stated, among other things, that his business would not perform exterior plastering work, did not change between the time of the loss in December 2020 and July 2023. [SUF 26, 32, 36] The fact that Calderon performed plastering work at the Lederer residence in December 2020 always grounds for rescission. There is nothing Lederer could have done, and thus no way to rely on any circumstance to his detriment, with respect to USSIC's rights to rescind and the timing of Calderon's bankruptcy, which was sought in March of 2021, shortly after the loss, and granted in June 2021. [SUF 29] Lederer filed the Underlying Action in December of 2022 [SUF 28]. In sum, Lederer cannot

and has not pointed to any evidence of how his rights, if any, were impacted by the timing of the July 2023 Rescission Agreement.

The fact that Lederer is displeased by the Rescission Agreement is not the type of prejudice that invalidates a mutual rescission of an insurance policy pursuant to Civil Code Section 1689(a).

### 3. None of the Other Reasons Given by Lederer that the "Mutual Consent" Was "Non-Existent or "Subject to a Triable Issue of Fact"

Lederer also asserts, without basis, that "mutual consent" was either "non-existent or subject to a triable issue of fact." However, Lederer fails in his opposition to cite to or submit any evidence that can contradict Calderon's sworn statement and signed Rescission Agreement. Mr. Calderon re-affirmed his agreement, i.e. consent, to rescission in the Stipulation to Be Bound filed on December 31, 2024 (Dkt. 19). Nevertheless, Lederer argues that the lack of evidence that Calderon was represented by counsel, his bankruptcy, and lack of "financial incentive" to disagree to or "contest" the rescission, means that there was no mutual consent. Lederer is wrong. Calderon's signature under penalty of perjury on the Agreement means that there was mutual consent. [SUF 36]

Mr. Calderon, an adult over of the age of 18, did not need to be represented by counsel to in order to properly consent to rescission of the -01 Policy. Neither would the lack of "financial incentive" to disagree to the rescission, as speculated by Lederer, negate mutual consent. The suggestion that Calderon had no "financial incentive" to disagree to or "contest" the rescission is not relevant to the validity of the Rescission Agreement. Similarly, the fact that USSIC refunded the premium to Calderon, validates, rather than invalidates, the Rescission Agreement.

### 4. Lederer Is Not Entitled to A Continuance to Conduct Depositions

Lederer footnotes a request for "a continuance in order to depose the parties to the rescission." This request is unwarranted, as it does not constitute a motion under FRCP Rule 56(d), or satisfy the requirements of the statute. The party seeking a Rule

10

56(d) continuance bears the burden of proffering facts sufficient to satisfy the requirements of 56(d). *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.1996). Lederer fails to explain what facts could be learned through deposition and whether such facts would preclude summary judgment. *Martinez v. Columbia Sportswear USA Corp.,* 553 F. App'x 760, 761 (9th Cir. 2014) Even if even Lederer obtained proof regarding Calderon's representation by counsel or lack thereof, or financial incentive to agree to rescission, the fact remains that Calderon did agree in writing to rescission. The information to be sought in depositions is based on mere on speculation.

To the extent the court is inclined to treat footnote 1 on Lederer's Opposition brief as a Rule 56(d) motion, the motion should be denied.

**B.     The Application Contained Material Misrepresentations When Submitted in July 2019 Entitling USSIC to Unilateral Rescission.**

In addition to mutual rescission, discussed above, USSIC is entitled to unilateral rescission pursuant to Civil Code Section 1689(b)(7) and the statutes referenced therein. Nevertheless, Lederer contends, erroneously, that Calderon's Artisan Application for insurance, submitted in July 2019, is not evidence that any of the responses therein were false when made, and thus does not qualify as evidence of a material misrepresentation because the exterior plastering work, which Calderon averred in his application MAC Builders did not perform, did not occur until December 2020. Again, Lederer is mistaken.

An insurance company has "the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks." *U.S. Fid. & Guar. Co. v. Lee Invs. LLC,* 551 F. Supp. 2d 1114, 1119 (E.D. Cal. 2008). "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." Cal. Ins. Code § 359. This means that a

11

contract can be rescinded – i.e. voided – following its inception, not merely at inception. *Lincoln Benefit Life Company v. Dallal* 500 F.Supp.3d 1041, 1068 (C.D. Cal. 2020).

The Artisan Application, submitted on July 15, 2019, contains straightforward questions regarding the applicant's scope of contracting work seeking information regarding the types of work currently performed by the applicant *and* the types of work the insured would perform during the pendency of the policy. These questions, not only seek information about the insured's business practices and scopes of work on day of the application, but about how the applicant will conduct its construction operations while the policy is force, are directly relevant to insurability, underwriting eligibility, and pricing of the risk. They are material as a matter of California law. See *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 476 (2005). As such, on July 15, 2019, pursuant to Insurance Code Section 356, Calderon had a duty to disclose truthful answers to the questions regarding the types of work performed and the types of work contemplated, i.e. "has or will the applicant perform," after the submission of the Application.[1] As stated on the application

> **By signing this application, the applicant warrants and represents that each of the facts and representations contained in this application, along with all other information supplied by or on behalf of the applicant, are true, complete and accurate. *It is further understood that the applicant's signature is binding with respect to all future applications and/or renewals* the applicant understands and agrees that U.S. Specialty Insurance Company […] has relied upon the information contained in this application to determine eligibility and acceptability of the risks, rates and coverage. The applicant understands that any misrepresentations or omissions shall constitute grounds for rescission of coverage and denial of claims.**

[SUF 13, emphasis added]

---

[1] *Rallod Transportation Co. v. Continental Insurance Company*, 727 F.2d 851, 853 (9th Cir. 1984), which involved an oral agreement by Continental to issue a ship's agent's liability policy, is irrelevant to the material misrepresentation analysis. There was no written application for the policy in *Rallod*.

12

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USSIC'S
MOTION FOR SUMMARY JUDGMENT        CASE NO. 2:24−cv−05998 CVD (ASx)

The Application binds the insured to its representations on its scopes of work, the answers to which are crucial to an applicant's insurability, as stated in the Kensinger Declaration. [SUF 9-11.] In particular, the Application asked whether the applicant would perform "exterior plastering" work. Calderon responded "No." [SUF 12] Calderon's representation became false in December 2020 when Calderon agreed to take on the stucco work requested by Lederer and hired his friend Carlos to perform the work. [SUF 24-26]

Lederer argues that Calderon's 2019 Artisan Application does not prove a material misrepresentation because "there is no evidence that USSIC asked for a renewal application or sought any additional information from MAC Builders at the time of renewal." In fact, the Application expressly states that "with respect to … renewals the applicant understands and agrees that [USSIC] has relied upon the information contained in this application to determine eligibility and acceptability of the risks, rates and coverage." Moreover, the effect of a material misrepresentation is not eliminated by the fact that it was made in securing the original policy and the one in question is a renewal where the renewal policy was issued in reliance on the statements in the application for the original insurance. *Solomon v. Federal Ins. Co.* 176 Cal. 133 (1917); 39 Cal. Jur. 3d Insurance Contracts § 183.

Lederer also argues that the "has or will" questions in the Artisan Application, and USSIC's asserted right to rely on the "will" answer is "illogical" because "[e]ven if MAC Builders harbored an intent to perform the proscribed activities at a date subsequent to the submitting its application, no evidence of intent has been provided. Nor is it certain that such a secret intent would be acted upon." [Lederer Opp., Dkt. 35, p. 7.] Nevertheless, proof of intent, "secret" or otherwise, to perform the "proscribed activities," such as exterior plastering, rendering MAC Builders an ineligible risk, is not required. See *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1269-70 (2007) [An intent to deceive is not required to qualify as a material misrepresentation.] The idea that the crucial words "or will" should be read

13
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USSIC'S
MOTION FOR SUMMARY JUDGMENT         CASE NO. 2:24−cv−05998 CVD (ASx)

out of the "has or will" questions asked by USSIC in the Artisan Application is directly contrary California's rules of policy interpretation, which extend to insurance policy applications. See *Duarte v. Pac. Specialty Ins. Co.*, 13 Cal. App. 5th 45, 54 (2017).

      Taking Lederer's argument to its logical conclusion, an insurer would not be entitled to rely on any representations regarding a prospective insured's business practices that relates to future conduct, and is limited to information regarding the applicant's business on the date of the application. For example, if USSIC issued a liability policy based on a negative answer on an application whether the applicant "has or will" perform work in constructing explosives as part of its operations, and then built a bomb during the policy, resulting in a catastrophic claim, the insured's "no" response to the explosives question on its Application would, under Lederer's theory, not be grounds for rescission. Such an interpretation is contrary to California law and would defeat the purpose of underwriting inquiry.

      *Mitchell v. United Nat'l Ins. Co.*, cited by Lederer in his opposition, supports USSIC's right to rely on truthful answers about Calderon's post-application business conduct. *Mitchell* involved an application for fire insurance for a commercial building owned by Mitchell's family trust. The April 11, 2000 application for insurance asked questions regarding the nature of business to be conducted and its payroll and receipts The insured represented would be used by Mitchell as a "video production studio and offices" and that "the business to be conducted in the building had $20,000 in payroll and generated $300,000 in receipts." *Mitchell*, 127 Cal.App.4th 457, 464. In fact, the business conducted in the building had no officers or employees, was used only to film a music video for two days in May or June of 2000 (post application), and, in July 2000 (also post application), the building was leased to a tenant who operated a garment business, which did not conform to the representations regarding the building's use stated on the April 11, 2000 application. *Id.* After the building was destroyed by fire, United National rescinded based on material misrepresentations in Mitchell's application for insurance. *Id.* at 465. The court held:

> The application was for significant insurance covering the peril of fire. The information sought went directly to questions of insurability, risk, and premium. The insured admitted that there were misrepresentations on the application, and that the insurer considered the information important to its underwriting decisions. Under these circumstances, a reasonable trier of fact could not find that the representations in this case were not material.

*Id.* at 476.

As in *Mitchell*, Calderon's representation that he did not perform exterior plastering work in his business, MAC Builders, was a material misrepresentation that entitles USSIC to unilateral rescission.

More recently, in *Favreau v. Navigators Ins. Co.*, No. G056718, 2020 WL 7351204 (Cal. Ct. App. Dec. 15, 2020) (unpublished), decided under facts similar to those presented here, the court confirmed the liability insurer's right to rescind an artisan policy issued to a contractor (FCW) who, on its last application in 2011, answered "No" to the questions asking if FCW was "currently performing any work involving new residential properties […] or does the applicant plan to in the future" and if FCW "had or will" perform waterproofing work.  The application included a section titled "Trade Specific Eligibility Questions." FCW was instructed to answer "No" if it had not performed, supervised, or subcontracted several listed activities in the past 10 years, but to answer "Yes" if it had "*or will* perform, supervise, or subcontract [any of those] activities." (Italics added.) For "Waterproofing," FCW answered "No."  A year later, in April of 2012, FCW entered into a contract for "new construction of a single family residence."  Between April 2012 and November 2012, after the last application, FCW invoiced its client for a variety of services, including waterproofing of doors and windows and the perimeter of the house.  The court concluded, *inter alia*, that FCW had misrepresented its intention to engage in waterproofing work on its 2011 application, which was grounds for rescission. *Id.* at *5.

15
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USSIC'S
MOTION FOR SUMMARY JUDGMENT         CASE NO. 2:24−cv−05998 CVD (ASx)

As a matter of clear California law, the exterior plastering work performed at Lederer's residence in December of 2020 entitles USSIC to unilateral rescission of the -01 Policy, based Calderon's July 15, 2019 application, the answers to which were expressly relied upon in USSIC's decision to renew the policy. [SUF 13, 15-18]

**C.     The Questions on the Artisan Application Are Clear and Unambiguous.**

Lederer also contends that the questions on USSIC's Artisan Application are ambiguous and, thus, USSIC cannot rely on the answers given.  Lederer's efforts to inject "ambiguity" into the questions fail because the questions on the Artisan Application, specifically the question "has or will the applicant perform any exterior plastering work" are clear, concise, and not capable of more one reasonable interpretation.  *See, e.g. Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014) ["A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."]

To support his argument that the straightforward questions on USSIC's Artisan Application are ambiguous, Lederer relies on *Duarte v. Pac. Specialty Ins. Co.*, 13 Cal. App. 5th 45, 60 (2017). *Duarte* does not apply here.  In *Duarte*, the court ruled that the insurer could not rely on the applicant's negative response to the following question:

> Has damage remained unrepaired from previous claim and/or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits?

The court found that, "to the extent question 4 can be interpreted it all," that it contained "garbled syntax" and was "utterly ambiguous," capable of multiple interpretations, such that the insured's interpretation of the question was reasonable and was not a misrepresentation.  Thus, the insurer was not permitted to rely on its own interpretation, which was that the insured failed to disclose a pending dispute with a tenant.  The *Duarte* court also ruled that the insurer could not rely on the insured's answer to the application question "Is there any type of business conducted on the premises?"  The court found that the phrase "any type of business" to be vague and

16

ambiguous, such that the insured landlord's "no" response was not a misrepresentation, even though the tenant periodically sold motorcycle parts that she refurbished on the premises for income.

The questions on USSIC's Artisan Application are a far cry from the questions on the application in *Duarte*. Unlike the compound and vague questions on the application in *Duarte*, the questions on USSIC's Artisan Application, are specific, concise, contain no subparts or modifiers (i.e. no "garbled syntax"), and are each specifically addressed to a single subject matter pertaining to types of construction work, e.g. "has or will the applicant perform any exterior plastering work." There are no "and/or" clauses in the sentences. *Duarte* does not apply here and does not support Lederer's Opposition to this motion.

Significantly, Lederer does not argue that the "exterior plastering" is an ambiguous term, i.e. capable of more than two reasonable interpretations. Instead, Lederer attempts to create ambiguity where none exists, arguing that the terms in each of the 46 underwriting questions are undefined and speculates regarding how the insured could answer in the negative to several of specific questions on the Artisan Application. The lack of a definition does not by itself render a term ambiguous. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854, 866, 855 (1993). Courts should not "strain to create an ambiguity where none exists." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916 (1986)

Lederer's speculation aside, the undisputed evidence is that USSIC did rely and, under California law, was entitled to rely on Calderon's answers to the questions on the application, and in particular, to the "No" answer pertaining to exterior plastering work, in determining whether to insure MAC Builders. [SUF 19] Lederer's contention that "the internal inconsistency [invented by Lederer's speculation] certainly casts doubt on the contention that answers to all of these questions are material" flies in the face of the rule that "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually

17

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USSIC'S
MOTION FOR SUMMARY JUDGMENT            CASE NO. 2:24−cv−05998 CVD (ASx)

sufficient to establish materiality as a matter of law." *Imperial Casualty & Indemnity Co,* 198 Cal.App.3d at 179.

The questions on USSIC's Artisan Application are clear and unambiguous. USSIC was entitled to reply on Calderon's responses to them.

### D. In the Alternative, the Classification Endorsement Bars Coverage

Based on Lederer's allegations in the pleadings and the undisputed extrinsic facts, including Lederer's Declaration regarding the workers' covering of the upstairs drains, there is no reasonable or genuine dispute that the "property damage" alleged in the Underlying Action was not "caused by or resulting from the classification(s) or operations(s) described in the [Classification Endorsement] Schedule." It is undisputed that, after Calderon completed the work in the August 16, 2019 oral contract with Lederer, Lederer sought and Calderon provided a bid for additional stucco patching work. [SUF 24] Based on the ordinary uses of the terms, stucco patching qualifies as "exterior plastering." It is undisputed that the water damage occurred in December 2020 while the stucco patching work was in progress and occurred when water intruded through the screw holes for the stucco system. [SUF 26-27] The workers' actions in covering the upper deck drains before leaving the jobsite, as stated in the Lederer declaration, were undisputedly taken as part of the stucco patching / exterior plastering work. [SUF 27]

The Classification Endorsement amends the Insuring Agreement such that the -01 Policy only covers "property damage" "caused by or resulting from the classification(s) or operations(s) described in the Schedule." [SUF 51] Exterior plastering is not within the trades covered in Classification Endorsement Schedule and is specifically excluded. [SUF 51]

Based on the foregoing, should the court not rule in favor of USSIC on its rescission cause of action, USSIC is entitled to judgment on its Declaratory Relief cause of action.

18

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF USSIC'S MOTION FOR SUMMARY JUDGMENT        CASE NO. 2:24−cv−05998 CVD (ASx)

## II. CONCLUSION

Based on the foregoing, USSIC is entitled to judgment confirming that the -01 Policy is rescinded and *void ab initio*, and that USSIC does not owe a duty to defend or indemnify Calderon in the Underlying Action under the -00 Policy or under the -01 Policy, consistent with the Proposed Judgment and Order submitted to the Court.[2]

Respectfully submitted,

Dated:  February 14, 2025      SELVIN WRAITH LLP

By: /s/ Gary R. Selvin
      Gary R. Selvin
      Elizabeth A. Doyle
      Attorneys for Plaintiff
      U.S. SPECIALTY INSURANCE COMPANY

470249

---

[2]  Lederer does not oppose USSIC's Motion with respect to the -00 Policy